Motion by the appellant for leave to reargue appeals from two judgments of the Supreme Court, Westchester County, entered November 30, 2011, and January 30, 2012, respectively, which were determined by decision and order of this Court dated May 15, 2013. Cross motion by the respondent Northern Westchester Hospital Center for leave to reargue the appeals and, upon re-argument, to modify the decision and order of this Court dated May 15, 2013, by deleting the provision awarding costs to the appellant, payable by Northern Westchester Hospital Center.
Upon the papers filed in support of the motion and the cross motion, and the papers filed in opposition thereto, it is
Ordered that the cross motion is denied; and it is further,
Ordered that the motion is granted and, upon reargument, the decision and order of this Court dated May 15, 2013 (Porcelli v Northern Westchester Hosp. Ctr., 106 AD3d 888 [2013]), is recalled and vacated, and the following decision and order is substituted therefor:
In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiff appeals from (1) a judgment of the Supreme Court, Westchester County (Smith, J.), entered November 30, 2011, which, upon a jury verdict in favor of the defendant Melissa Tsai and against her on the issue of liability, is in favor of that defendant and against her dismissing the complaint insofar as asserted against that defendant, and (2) a judgment of the same court entered January 30, 2012, which, upon the granting of the motion of the defendant Northern Westchester Hospital Center pursuant to CFLR 4401 for judgment as a matter of law dismissing the cause of action asserted against that defendant alleging that it is directly liable to the plaintiff in connection with its alleged policy of intubation of certain newborn infants, made at the close of the plaintiffs evidence, and upon the jury verdict, is in favor of that defendant and against her, in effect, dismissing the causes of action asserted against that defendant alleging that it is directly liable to the plaintiff in connection with its alleged policy of intubation *704 of certain newborn infants and that it is vicariously liable for the tortious conduct of the defendant Melissa Tsai.
Ordered that the judgment entered November 30, 2011, is reversed, on the law, the complaint is reinstated against the defendant Melissa Tsai, and the matter is remitted to the Supreme Court, Westchester County, for a new trial against the defendant Melissa Tsai before a different Justice, and the entry of an appropriate amended judgment thereafter; and it is further,
Ordered that the judgment entered January 30, 2012, is modified, on the law, by deleting the provision thereof in favor of the defendant Northern Westchester Hospital Center and against the plaintiff, in effect, dismissing the cause of action asserted against that defendant alleging that it is vicariously liable for the tortious conduct of the defendant Melissa Tsai; as so modified, the judgment entered January 30, 2012, is affirmed, the cause of action against the defendant Northern Westchester Hospital Center alleging that it is vicariously liable for the tortious conduct of the defendant Melissa Tsai is reinstated, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings on that cause of action in accordance herewith before a different Justice, including the new trial against the defendant Melissa Tsai, and the entry of an appropriate amended judgment thereafter; and it is further,
Ordered that one bill of costs is awarded to the plaintiff.
On November 14, 2000, the plaintiff gave birth to a daughter (hereinafter the infant) at the defendant Northern Westchester Hospital Center (hereinafter the hospital). Due to the presence of “thin” meconium upon delivery, the infant’s mouth and nose were suctioned, as soon as the infant’s head emerged, to remove any meconium-stained fluid. After the infant was delivered, the defendant physician Melissa Tsai used a laryngoscope to suction any meconium from the infant’s stomach, and inserted an endotracheal tube through the infant’s mouth into the airway to check for the presence of meconium below the vocal cords. Tsai did not observe meconium in that part of the infant’s body. Shortly thereafter, the infant developed, among other things, severe respiratory problems, and underwent several surgical procedures, including a thoracotomy.
In March 2003, the plaintiff commenced this action, inter alia, to recover damages for medical malpractice, alleging that Tsai negligently inserted the endotracheal tube, causing, among other things, a pharyngeal tear which resulted in an infection and permanent injuries, that the hospital, as Tsai’s employer, was vicariously liable for Tsai’s tortious conduct, and that the hospital was directly liable to the plaintiff by virtue of its adop *705 tion and implementation of a policy requiring intubation of all infants in whom retained meconium was observed. At the ensuing jury trial, following the close of the plaintiff’s case, the hospital moved pursuant to CPLR 4401 for judgment as a matter of law on the cause of action asserting that it was directly liable to the plaintiff by virtue of its alleged policy of intubating newborn infants who had observable retained meconium, and the trial court granted the motion. Following the close of the evidence, the jury returned a verdict on the issue of liability in favor of Tsai, finding that she did not depart from accepted medical practice. On November 30, 2011, the Supreme Court entered a judgment in favor of Tsai and against the plaintiff dismissing the complaint against Tsai, and on January 30, 2012, the Supreme Court entered a judgment in favor of the hospital and against the plaintiff dismissing the complaint insofar as asserted against the hospital, thus dismissing both the cause of action alleging the hospital’s direct liability that was disposed of by the CPLR 4401 motion, and the cause of action asserting that the hospital was vicariously liable for the tortious conduct of Tsai. The plaintiff appeals from these judgments.
“To succeed on a motion for judgment as a matter of law pursuant to CPLR 4401, a defendant has the burden of showing that there is no rational process by which the jury could find in favor of the plaintiff and against the moving defendant” (Figueroa v City of New York, 101 AD3d 674, 674-675 [2012]; see Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]). “In determining whether the defendant has met this burden, a court must accept the plaintiffs evidence as true and accord the plaintiff the benefit of every reasonable inference which can reasonably be drawn from the evidence presented at trial” (Figueroa v City of New York, 101 AD3d at 675). Here, the plaintiff’s expert relied on the Neonatal Resuscitation Guidelines (hereinafter the guidelines) published jointly by the American Academy of Pediatrics and the American Heart Association, which provided that the suctioning of a baby’s mouth and nose, without also intubating the baby, may be adequate when only thin meconium is observed or the baby is “active.” However, the plaintiff presented no evidence that the guidelines precluded a doctor from exercising his or her judgment to intubate a baby after the initial suctioning whenever meconium of any consistency is observed. Further, the plaintiff presented no evidence that the hospital had a policy of intubating all infants whenever retained meconium of any consistency is observable upon delivery. To the contrary, Dr. John Stafford, the Chief of Neonatology at the hospital, and Tsai, both of whom were called as witnesses by the plaintiff, testified that there was no “hard and fast rule *706 about the intubation of infants through meconium” or any “mandates,” and that doctors at the hospital exercised their “clinical judgment” in deciding whether intubation was warranted. Therefore, even accepting the plaintiffs evidence as true and affording it every favorable inference, there is no rational process by which the jury could find that the hospital adopted a policy which departed from accepted medical practice. Accordingly, the trial court properly granted the hospital’s motion pursuant to CPLR 4401 for judgment as a matter of law dismissing the cause of action alleging that such a policy had been adopted, and that its implementation of the policy constituted a departure from accepted medical practice.
However, the trial justice’s excessive intervention in the proceedings, as well as the cumulative effect of the trial court’s improper conduct, deprived the plaintiff of her right to a fair trial (see CPLR 5501 [a] [1]; 4017; Rivera v W. & R. Serv. Sta., 34 AD2d 115 [1970]; see generally People v Charleston, 56 NY2d 886, 888 [1982]; People v Yut Wai Tom, 53 NY2d 44 [1981]). Accordingly, we grant a new trial against Tsai.
“[A] 11 litigants, regardless of the merits of their case, are entitled to a fair trial” (Habenicht v R. K. O. Theatres, 23 AD2d 378, 379 [1965]; see DeCrescenzo v Gonzalez, 46 AD3d 607, 608 [2007]). A trial justice plays a “vital role in clarifying confusing testimony and facilitating the orderly and expeditious progress of the trial,” but that “power is one that should be exercised sparingly” (People v Yut Wai Tom, 53 NY2d at 57). Accordingly, a trial justice may not “ ‘so far inject himself [or herself] into the proceedings that the jury could not review the case in the calm and untrammelled spirit necessary to effect justice’ ” (Schaffer v Kurpis, 177 AD2d 379, 380 [1991], quoting Kamen Soap Prods. Co. v Prusansky & Prusansky, 11 AD2d 676, 676 [I960]).
A trial justice must maintain an atmosphere of impartiality. Here, while the plaintiffs counsel may have been overly aggressive, and at times even antagonized the trial justice, nonetheless, a trial justice should “ ‘at all times maintain an impartial attitude and exercise a high degree of patience and forbearance’ ” (Salzano v City of New York, 22 AD2d 656, 657 [1964], quoting Buckley v 2570 Broadway Corp., 12 AD2d 473, 473 [I960]). Indeed, our review of the record convinces us that the repeated conflict between the court and the plaintiffs counsel, at all phases of the trial — and often times in the presence of the jury — unnecessarily injected personality issues into the case, which militated against a fair trial. The trial justice demonstrated a propensity to interrupt, patronize, and admonish the *707 plaintiffs counsel, and gave the plaintiffs counsel significantly less leeway with regard to examination and cross-examination of witnesses than that which was afforded the defendants’ counsel. By way of example, at one point, the trial justice, after precluding the plaintiffs counsel from cross-examining a witness, advised the plaintiffs counsel, in front of the jury, that she was aware of the rules of evidence regarding when an attorney and client can speak during a break, and would explain them to the plaintiffs counsel “later.” Another time, again in front of the jury, following a somewhat heated discussion between the trial justice and the plaintiffs counsel, the trial justice advised the plaintiffs counsel to “go review the books tonight.” At one sidebar conference, the trial justice went so far as to advise the plaintiffs counsel, upon indicating that he was interrupting her, that she would not “allow the reporter to take any words from you at this point because I don’t think that you are going to do any service to yourself, the type of emotional tantrums that you have been having.” Later in the trial, in front of the jury, the trial justice inappropriately admonished the plaintiffs counsel to “tone down the histrionics,” and advised him that she was “bewildered” as to counsel’s questioning, asserting that she found it to be “not that important,” in effect, irrelevant, and that a question posed by counsel was “not very good.” During one contentious exchange in front of the jury, the trial justice stated that the plaintiffs counsel had put on a display that was “clearly, clearly fodder for a contempt citation.” In addition to the foregoing, numerous injudicious remarks were made by the trial justice, both sua sponte and in response to comments made by the plaintiffs counsel. At one point, the trial justice stated to the plaintiffs counsel, in front of the jury, that if counsel were permitted to examine the defendant’s expert witness before trial, he would be “like a leech on a horse.” The trial justice further stated that she was “astonished at the many things” that counsel said during the course of the trial. We note that the foregoing is not an exhaustive recitation of the incidents that give us cause for concern.
Under the circumstances of this case, by virtue of the cumulative effect of the improper conduct of the trial justice, the plaintiff was deprived of a fair trial. As a result, the jury could not have considered the issues at trial in a fair, calm, and unprejudiced manner (see DeCrescenzo v Gonzalez, 46 AD3d 607 [2007]; Sutton v Kassapides, 73 AD3d 1021, 1021 [2010]; Gentile v Terrace Hgts. Hosp., 57 AD2d 585 [1977]; Dicker v Waldbaum’s Inc., 56 AD2d 621 [1977]; Ougourlian v New York City Health & Hosps. Corp., 5 AD3d 644 [2004]). Accordingly, a new trial against Tsai, before a different Justice, is warranted.
*708 The hospital’s motion pursuant to CPLR 4401 did not encompass the cause of action alleging that it is vicariously liable for Tsai’s tortious acts, but the judgment entered in favor of the hospital dismissed that cause of action, based upon the jury verdict in favor of Tsai. Since we are reinstating the complaint against Tsai, we must also reinstate the cause of action alleging vicarious liability against the hospital. The final disposition of that cause of action must now await the disposition of the trial against Tsai, and the Supreme Court, Westchester County, shall enter an appropriate amended judgment in connection with that cause of action after that trial, and, if warranted, after conducting any further proceedings that are or may be necessary to determine whether the hospital is vicariously liable for Tsai’s conduct and the damages for which it might be liable.
The parties’ remaining contentions are either without merit or not properly before this Court. Dillon, J.P., Angiolillo, Dickerson and Cohen, JJ., concur.